UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HI-DESERT MEDICAL CENTER<br>6601 White Feather Road<br>Joshua Tree, CA 92252,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT, Secretary,<br>U.S. DEPARTMENT OF HEALTH AND<br> HUMAN SERVICES<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>    Defendant. | Case No. _____ |

## COMPLAINT FOR REVIEW OF AGENCY ACTION

### I. JURISDICTION AND VENUE

1. Plaintiff Hi-Desert Medical Center ("Plaintiff") seeks judicial review of a final decision of the Administrator, Centers for Medicare & Medicaid Services ("Administrator"), reversing a decision of the Provider Reimbursement Review Board (referred to herein as the "PRRB").

2. This action challenges the administrative action of Defendant Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("HHS"), under federal law and regulations, and, accordingly, this Court has jurisdiction over this action under 42 U.S.C. § 1395oo.

3. Venue in this District is proper under 42 U.S.C. § 1395oo(f)(1).

## II. THE PARTIES

4.     During the fiscal year ending June 30, 1995, Plaintiff operated a hospital-based skilled nursing facility ("HB-SNF") in Joshua Tree, California.

5.     Defendant Michael O. Leavitt is the Secretary of HHS and is sued in his official capacity. Defendant is responsible for the administration of the Medicare program. Defendant exercises the administrative responsibility of the Medicare program primarily through the Centers for Medicare and Medicaid Services (sometimes referred to herein as "CMS," also formerly known as the Health Care Financing Administration), an agency of HHS. Defendant also contracts with private organizations, and, in this instance, United Government Services (a member of the Blue Cross and Blue Shield Association)("Fiscal Intermediary"), to act as fiscal intermediaries for the Medicare Program.

## III. FACTUAL AND PROCEDURAL BACKGROUND

6.     During the time period relevant to this matter, the Medicare program reimbursed eligible HB-SNFs and freestanding skilled nursing facilities ("FS-SNFs") on a *per diem* basis for the "reasonable cost" of covered services provided to Medicare beneficiaries. 42 U.S.C. §1395x(v)(1)(A). "Reasonable cost" is defined in 42 U.S.C. §1395x(v)(1)(A) as only those costs "actually incurred, excluding therefrom any part of incurred cost[s] found to be unnecessary in the efficient delivery of needed health services." The reasonable cost "shall be determined <u>in accordance with regulations</u> establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." *Id.* (emphasis added). The Secretary of Health and Human Services (the "Secretary") is authorized to establish appropriate cost limits as part of his method of determining reasonable costs. *Id.*

7. In a clear statement that "reasonable cost" means the *full cost*, and not the partial cost, that is "actually incurred," the statute prohibits Medicare and other payers from "cross-subsidizing" each other. It states that "[s]uch regulations shall (i) take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this title will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs." 42 U.S.C. §1395x(v)(1)(A) (emphasis added). The "no cross-subsidization" principle is further required by 42 C.F.R. §§413.5(a) and (b)(3) and 42 C.F.R. §413.50.

8. Per diem routine costs (as distinguished from ancillary costs which are not an issue in this matter) are subject to Routine Cost Limits ("RCLs"). Before 1984, the RCL for FS-SNFs was set at 112 percent of the peer group mean for FS-SNFs and the RCL for HB-SNFs was set at 112 percent of the peer group mean for HB-SNFs. The RCL for HB-SNFs was higher than the RCL for FS-SNFs.

9. 42 U.S.C. §413.30(f)(1) provides for the granting of exceptions from the RCL for SNFs which provide atypical services as therein defined. It reads as follows:

> (f) Exceptions. Limits established under this section may be adjusted upward for a provider under the circumstances specified in paragraphs (f)(1) through (f)(5) of this section. An adjustment is made only to the extent the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.
>
> (1) Atypical services. The provider can show that the –
>
> (i) Actual cost of items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature and scope, compared to the items or services generally furnished by providers similarly classified; and

>(ii) Atypical items or services are furnished because of the special needs of the patients treated and are necessary in the efficient delivery of needed health care.

10. The substance of 42 C.F.R. §413.30(f)(1) was first issued as a regulation effective July 1, 1974 at 39 Federal Register 20164 (June 6, 1974). It was originally numbered 20 C.F.R. §405.460(f)(2). The precise language of 42 C.F.R. §413.30(f)(1) was issued as an amended regulation effective July 1, 1979 at 44 Federal Register 31802, at 31804 (June 1, 1979). The regulation was now numbered 42 C.F.R. §405.460(f)(1). With no changes to its text, as "part of our overall plan for reorganization of the regulations in 42 C.F.R Part 405 in order to make them easier to locate and use," the regulation was redesignated in 1986 at 51 Federal Register 34790 (September 30, 1986) as 42 C.F.R. § 413.30(f)(1), the designation by which it was identified at the time relevant to this dispute.

11. In 1984, as part of the Deficit Reduction Act ("DEFRA") of 1984, Congress lowered the RCL for HB-SNFs relative to the RCL for FS-SNFs. This change was codified at 42 U.S.C. § 1395yy(a). The RCL for FS-SNFs remained at "112% of the mean per diem routine service cost for freestanding skilled nursing facilities". The RCL for HB-SNFs, however, was lowered to "the limit for freestanding skilled nursing facilities . . . , plus 50% of the amount by which 112% of the mean per diem routine service cost for hospital-based skilled nursing facilities . . . exceeds the limit for freestanding skilled nursing facilities."

12. Although 42 U.S.C. § 1395yy lowered the RCL of HB-SNFs, it did not prohibit HB-SNFs which qualified for an atypical services exception from obtaining full reimbursement of reasonable costs. The only evidence of legislative intent which specifically addresses this issue states that providers, where justified, should be able to receive "up to all of their reasonable costs" through the exception process:

> Under this provision, <u>both hospital-based and freestanding facilities</u> could continue to apply for and receive exceptions from the cost limits in circumstances where high costs result from more severe than average case mix or circumstances beyond the control of the facility. Indicators of more severe case mix include a comparatively high proportion of medicare days to total patient days, comparatively high ancillary costs, or relatively low average length of stay for all patients (an indicator of the rehabilitative orientation of the facility). <u>Facilities eligible for exceptions could receive, where justified, up to all of their reasonable costs</u>.

(Deficit Reduction Act of 1984, Explanation of Provisions Approved By The Committee on March 21, 1984, Committee On Finance United States Senate, Senate Print 98-169, Volume I, emphasis added). After the 1984 codification of 42 U.S.C. § 1395yy, and consistent with this legislative history and with his interpretation of 42 C.F.R. § 413.30(f)(1) prior to the codification of 42 U.S.C. § 1395yy, the Secretary continued to measure the exceptions he awarded to HB-SNFs from the RCL, and not from some point above the RCL.

13.   In July 1994, ten years after the codification of 42 U.S.C. §1395yy, the Secretary, through his Health Care Financing Administration (now CMS) issued Transmittal No. 378 which published new provisions of his Provider Reimbursement Manual ("PRM") relating to SNF exception requests. Among these was PRM §2534.5 which required that the exception amount of a HB-SNF be measured not from its RCL, as had been the Secretary's interpretation up through July 1994, but that it now be measured from 112 percent of its peer group mean, a point significantly higher than the RCL for a HB-SNF. The Secretary thereby created a reimbursement "gap" by which all HB-SNFs that provide atypical services to their patients could now never receive reimbursement for their per diem costs between the RCL and 112 percent of the peer group mean. This despite the fact that such HB-SNFs met the regulatory requirements for additional reimbursement in the form of a §413.30(f) atypical services exception.

14.   Because of the acuity level of the Medicare beneficiaries to whom Plaintiff provided its services during the fiscal year ending June 30, 1995, Plaintiff's costs exceeded its RCL.

15.   Pursuant to 42 C.F.R. §413.30(f)(1), Plaintiff requested an exception to the RCL for its fiscal year ending June 30, 1995. The Fiscal Intermediary and the Secretary agreed that the Plaintiff had provided atypical services and was entitled to an award of additional reimbursement in the form of an exception amount. However, pursuant to PRM §2534.5, the Fiscal Intermediary and the Secretary measured the amount of the exception from the higher point of 112 percent of the Plaintiff's peer group mean, instead of from the lower point of the Plaintiff's RCL as had been the Secretary's interpretation of its governing regulation for a period of twenty years. This resulted in a reimbursement gap of $155,588, which represents the amount between the RCL and 112 percent of the peer group mean for which no exception was granted due solely to the application of PRM §2534.5.

16.   Plaintiff filed a timely appeal of the denial of its full exception request with the PRRB. The PRRB is a board established by the Secretary to hear appeals by a provider of health care services when a provider is not satisfied with certain cost decisions made by its Fiscal Intermediary. A decision of the PRRB becomes a final decision unless the Administrator reverses, affirms, or modifies the decision.

17.   On October 17, 2006, Plaintiff's appeal of the reimbursement gap issue was heard on the record by the PRRB in Baltimore, Maryland. On February 2, 2007, the PRRB issued its decision in the case, granting Plaintiff's appeal. A true and correct copy of this decision is attached hereto as Exhibit A.

18.  The Administrator initiated review of the PRRB's decision pursuant to 42 C.F.R. 405.1875. On April 4, 2007, the Administrator reversed the PRRB's decision, and made a final administrative decision of the Secretary. A true and correct copy of this decision is attached hereto as Exhibit B. Plaintiff received notice of the decision on April 9, 2007. Pursuant to 42 U.S.C. §1395oo(f) Plaintiff is seeking judicial review of the Administrator's decision.

19.  This action is timely filed in accordance with 42 U.S.C. §1395oo(f) in that it has been brought within 60 days of Plaintiff's receipt of the Administrator's decision.

## IV. FIRST CLAIM FOR RELIEF

20.  Plaintiff realleges and incorporates by reference paragraphs 1 through 19 above.

21.  Pursuant to 42 U.S.C. §1395oo(f)(1), the Secretary's action is governed by the provisions of the Administrative Procedure Act ("APA"). Section 706 of the APA requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

22.  The Secretary's action in measuring the amount of the Plaintiff's atypical services exception from 112 percent of the peer group mean instead of from the RCL is arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law because:

   a.  It is inconsistent with the governing regulation found at 42 C.F.R. §413.30(f)(1);

   b.  The Secretary's action is a departure from the Secretary's earlier method of determining HB-SNF exception requests. As such, the Secretary must examine the relevant data and articulate a satisfactory explanation of his action including a rational connection between the facts found and the choice made. The Secretary's new reimbursement gap rule at

PRM §2534.5 is arbitrary, capricious and an abuse of discretion because the Secretary has relied on factors which Congress has not intended him to consider, entirely failed to consider an important aspect of the problem, offered an explanation for his decision that runs counter to the evidence before the agency, is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, contains no rational connection between the facts found and the choice made, fails to balance equitable considerations, rests on grounds that fail to justify the result, and makes no sense;

  c. It arbitrarily, capriciously and irrationally makes it impossible for any HB-SNF to obtain any exception amount for that portion of its costs which are between the RCL and 112 percent of its peer group mean (i.e. are within the reimbursement gap), but then does award an exception amount for that portion of its costs which do exceed 112 percent of its peer group mean;

  d. It violates the rule against cross-subsidization found at 42 U.S.C. §1395x(v)(1)(A), 42 C.F.R. §§413.5(a) and (b)(3), and 42 C.F.R. §413.50;

  e. It unlawfully discriminates in favor of FS-SNFs and against HB-SNFs. Under PRM §2534.5 a FS-SNF is eligible to receive an exception for atypical services under 42 C.F.R. §413.30(f)(1) for its costs above its RCL, while it is impossible for a HB-SNF to receive such an exception for its costs exceeding its RCL, but below 112 percent of its peer group mean.

## V. SECOND CLAIM FOR RELIEF

23. Plaintiff realleges and incorporates by reference paragraphs 1 through 22 above.

24. The Secretary's action in measuring the amount of the Plaintiff's atypical services exception from 112 percent of the peer group mean instead of from the RCL is arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law because it is a

retroactive application of a new rule without a statutory grant of the power to make retroactive rules and in violation of the APA.

## VI.  THIRD CLAIM FOR RELIEF

25. Plaintiff realleges and incorporates by reference paragraphs 1 through 24 above.

26. The APA, 5 U.S.C. §§500-576, requires that when a policy acts as a substantive rule and alters an existing regulatory scheme, defendant must adopt that policy according to procedures set forth in the APA.

27. PRM §2534.5 prohibits a HB-SNF that provides atypical services from being reimbursed for costs between its RCL and 112 percent of its peer group mean.  Before the 1994 adoption of PRM §2534.5, this requirement did not exist, and for a period of 20 years the Secretary had definitively interpreted his controlling regulation at 42 C.F.R §413.30(f)(1) to permit a HB-SNF to obtain additional reimbursement, in the form of an atypical services exception, for its costs between its RCL and 112 percent of its peer group mean.

28. 42 U.S.C. §1395yy(c), promulgated in 1984 with the rest of §1395yy, states that "The Secretary may make adjustments in the limits set forth in subsection (a) of this section with respect to any skilled nursing facility to the extent the Secretary deems appropriate, based upon case mix or circumstances beyond the control of the facility."  This subsection (c) grants the Secretary broad discretion in adjusting the RCLs, but provides no legislative rule implementing this discretion.  The legislative rule controlling the exception process is the regulation at 42 C.F.R. §413.30(f)(1) which was promulgated not pursuant to the authority of 42 U.S.C. §1395yy(c), but 5 years before, and in substance 10 years before, the promulgation of that 1984 statute.

29. The Secretary admits that PRM §2534.5 is based on his power to exercise his judgment as to how best to implement the general statutory mandate found at 42 U.S.C. §1395yy(c). PRM §2534.5 is therefore a substantive rule imposing new requirements upon HB-SNFs. As such it must be adopted pursuant to the notice and comment rulemaking provisions of the APA.

30. PRM §2534.5 is a revision of the Secretary's definitive interpretation of his regulation at 42 C.F.R. §413.30(f)(1) governing his exception process for HB-SNFs. As such it must be adopted pursuant to the notice and comment rulemaking provisions of the APA.

31. PRM §2534.5 was not adopted pursuant to notice and comment rulemaking procedures as required by the APA, 5 U.S.C. §553. Accordingly, PRM §2534.5 was invalid when it was applied to deny Plaintiff's exception request.

## VII. FOURTH CLAIM FOR RELIEF

32. Plaintiff realleges and incorporates by reference paragraphs 1 through 31 above.

33. The Medicare statutes provide:

> No rule, requirement, or other statement of policy (other than a national coverage determination) that established or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1).

42 U.S.C. §1395hh(a)(2). PRM §2534.5 established and changes a substantive legal standard governing the payment for services and, therefore, was required to be adopted as a regulation. Because it was not so adopted, it was invalid when it was used to deny Plaintiff's exception request.

WHEREFORE, Plaintiff prays for judgment against defendant as follows:

1. That the Court set aside the Secretary's final decision as reflected in the Administrator's reversal of the PRRB's decision in this case, and remand this matter to the Secretary with an order that the Secretary award the Plaintiff an exception for atypical services for its fiscal year ending June 30, 1995 without the deduction of the PRM § 2534.5 reimbursement gap at issue in this case;

2. That the Court award Plaintiff the pre-judgment interest that it is entitled to as a matter of right under 42 U.S.C. § 1395oo(f)(2);

3. That the Court award Plaintiff costs; and

4. That the Court grant to Plaintiff such other relief that the Court deems proper.

Respectfully submitted,

*/s/ Andrew Hurst*
Andrew L. Hurst
D.C. Bar # 455471
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9200

Dated: June 1, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Hi-Desert Medical Center, 6601 White Feather Road, Joshua Tree, CA 92252

## DEFENDANTS

Michael O. Leavitt, Secretary, U.S. Department of Health and Human Services

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Bernardino
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Andrew L. Hurst
Reed Smith LLP
1301 K Street, N.W. -- Suite 1100, East Tower
Washington, DC 20005
(202) 414-9200

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

● **C.** *Administrative Agency Review*

☒ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*    OR    ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ◉ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Review of reimbursement determination made by Secretary pursuant to 42 U.S.C. § 1395oo.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐   NO ☒   If yes, please complete related case form.

DATE June 1, 2007   SIGNATURE OF ATTORNEY OF RECORD  /s/

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.